IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLAS A. PADRON, | § | |
|     Movant, | § | 3:17-cv-1893-M (BT) |
| v. | § | 3:12-cr-0211-M (BT) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Nicolas Padron, a federal prisoner, filed a *pro se* motion to vacate, set-aside, or correct his sentence under 28 U.S.C. § 2255. The District Court referred the resulting civil action to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should dismiss the motion as barred by the statute of limitations, or alternatively, deny the motion.

I.

On September 10, 2013, Movant pleaded guilty to one count of conspiracy to unlawfully distribute a controlled substance, hydrocodone, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(E)(i). On November 25, 2014, the district court sentenced him to 87 months in prison. On February 1, 2016, the Fifth Circuit Court of Appeals affirmed his conviction and sentence. *United States v. Padron*, 631 F. App'x 250 (5th Cir. 2016). On

1

June 27, 2016, the Supreme Court denied certiorari. *Padron v. United States*, 136 S. Ct. 2532 (2016).

On July 7, 2017, Movant filed a § 2255 motion to vacate, set-aside, or correct his sentence. By his motion, Movant argues he received ineffective assistance of counsel at sentencing when:

(1) Counsel failed to object that the district court improperly calculated his sentence;

(2) Counsel failed to object that he was sentenced to more time than the statutory maximum; and

(3) Counsel failed to object that the district judge did not explain the sentence or her reason for deviating from the proper guideline range.

On July 11, 2017, Movant filed an amended motion arguing that:

(1) His offense level was increased for maintaining a premises for the purpose of distributing a controlled substance, but this conduct was already accounted for in the offense itself;

(2) He was held responsible for units of hydrocodone that should not have been counted; and

(3) His sentence reduction of two-levels in anticipation of U.S.S.G. Amendment 782 should have lowered his offense level to 25.

II.

The following facts are taken from the Factual Resume filed in the criminal case in support of Movant's guilty plea, *United States v. Padron*, 3:12-cr-00211-M-1. (ECF No. 295.)

In the fall of 2010, Movant and coconspirator Jose Martinez opened Padron Wellness Clinic ("PWC") in Dallas, Texas. PWC operated as a pill-mill, meaning it functioned as a place to unlawfully obtain controlled substances, such as hydrocodone, and not as a legitimate medical facility. Movant, a medical doctor, and business manager Martinez charged cash only for office visits where Movant would do little to no physical examination and would prescribe controlled substances including hydrocodone and alprazolam. Movant and Martinez generally charged $250 for a new patient office visit and $185 for an established patient visit.

The coconspirator dealers would recruit "patients," often from homeless shelters, and drive them in groups to PWC. The dealers would set appointments on PWC's schedule and would typically bring in multiple patients at a time. The dealers would escort the patients into PWC, coordinate with Martinez and pay cash for the office visits for all the patients they brought to PWC. Sometimes Movant would see two or more patients at a time in the exam room. Patient visits were short, and patients

would normally leave with a 30-day prescription of 120 units of hydrocodone and 30 to 90 units of alprazolam. Movant diagnosed most of his patients with lower back pain and anxiety, without regard to their true condition. For most of these patients, Movant did not prescribe or treat these "symptoms" with anything other than hydrocodone and alprazolam. Thus, these prescriptions were medically unnecessary and outside the scope of professional practice.

Coconspirator Lisa Hollier, a licensed pharmacist, owned and operated Urban Independent Pharmacy ("UIP"). Hollier and Movant met to discuss and implement a procedure for the staff at PWC to fax prescriptions for hydrocodone, Xanax, and other controlled substances to UIP. Employees at UIP would contact Movant and his staff to inform them of the supply of controlled substances available to dispense at UIP.

Once Movant issued the prescriptions, the coconspirator dealers would drive the patients to UIP to get the prescriptions filled. At UIP, these groups of patients would come in together and fill their prescriptions issued by Padron for the same type and quantities of controlled substances. Hollier had large amounts of hydrocodone and alprazolam in pre-filled bottles ready each day to accommodate the large groups of dealers and their patients from PWC and other clinics. The dealers would also furnish

4

the money to pay for the narcotics, and at times paid Hollier directly for multiple patients' prescriptions. After Hollier filled the prescriptions, the patients would give the dealers the pills. The dealers sold the pills on the street for profit.

Based on these facts, Movant pleaded guilty to conspiracy to unlawfully distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(E)(i).

## III.

**1. Statute of Limitations**

The government argues the motion is barred by the statute of limitations. The Antiterrorism and Effective Death Penalty Act of 1996 establishes a one-year statute of limitations for federal habeas proceedings. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub. L. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). The statute provides that the limitations period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the Movant was prevented from filing by such governmental action;

5

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2255(f).

In most cases, the limitations period begins to run when the judgment becomes final. *See* 28 U.S.C. § 2255(f)(1). In this case, Movant's conviction became final on June 27, 2016, when the Supreme Court denied his motion for certiorari. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (stating finality attaches when the Supreme Court "affirms a conviction on the merits on direct review or denies a motion for a writ of certiorari, or when the time for filing a certiorari motion expires.") Movant then had one year, or until June 27, 2017, to file his § 2255 motion.

Movant dated his motion June 26, 2017, and he states he placed his motion in a "freestanding outdoor lockbox with no interaction with prison staff" on that date. (ECF No. 18 at 1.) A motion filed by an inmate is deemed filed when the inmate deposits the motion in the institution's internal mailing system. *See* Rules Governing § 2255 Proceedings, Rule 3(d). This is often referred to as the "mailbox rule."

6

The government disputes that Movant deposited his motion in the prison mail system on June 26, 2017. The government states the postmark shows the motion was not mailed until July 12, 2017. The government also submits an affidavit stating that the priority mail sticker attached to the motion's envelope was not placed there by prison officials. (ECF No. 9 at 9; Gov. App. at 1.)  It appears the government may be arguing that Movant used a third party to mail his motion from the post office. The government further states the prison has special procedures for prioritizing special and legal mail. Movant, however, did not send his motion using the special mail procedures for legal mail, so there is no log of when prison officials received his motion for mailing. (*Id.*)

In his reply, Movant states his motion was returned to him for insufficient postage.[1]  (ECF No. 18 at 1.)  He corrected the postage and re-mailed the motion. Movant contends that even though his motion was returned to him for insufficient postage, the motion is timely because he initially placed the motion in the mail on June 26, 2017.

The Fifth Circuit, however, has determined that improper postage does not entitle a prisoner to the benefit of the mailbox rule. The Court stated that a prisoner is responsible for

---

[1]   Although Petitioner states he attached a copy of the returned mail envelope to his pleadings, no copy was attached or submitted to the court.

> doing all that he or she can reasonably do to ensure that documents are received by the clerk of court in a timely manner. Failure to stamp or properly address outgoing mail or to follow *reasonable* prison regulations governing prisoner mail does not constitute compliance with this standard.

*Thompson v. Rasberry*, 993 F.2d 513, 514 (5th Cir. 1993); *see also, Dison v. Whitley,* 20 F.3d 185, 186-87 (5th Cir. 1994) (stating that where a prisoner failed to use proper postage, his pleading was not considered filed on the date he gave it to prison officials for mailing.)

Movant's motion therefore, was not filed on June 26, 2017. Instead it was filed after the motion was returned for insufficient postage and remailed by Movant, which appears to be around July 12, 2017. The motion is therefore untimely.

### 2.  **Equitable Tolling**

The one-year limitation period is subject to equitable tolling in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling" (quoting *Davis*, 158 F.3d at 811)). The Fifth Circuit has held that "'[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in

8

some extraordinary way from asserting his rights.'" *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). Movant bears the burden of proof to show he is entitled to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Movant has failed to establish that he was misled by the government or prevented in some extraordinary way from asserting his rights. He is therefore not entitled to equitable tolling.

Additionally, as discussed below, the motion is without merit.

### 3.   **Ineffective Assistance of Counsel**

To sustain a claim of ineffective assistance of counsel, Movant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Movant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

9

Even if counsel is proven deficient, a Movant must prove prejudice. To prove such prejudice, Movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A.   Sentence Calculation

Movant argues his counsel was ineffective when counsel failed to object that: (1) the Court incorrectly determined his sentence under the sentencing guidelines; and (2) his sentence exceeded the statutory maximum.

Movant argues the court improperly calculated his advisory sentence range. The court determined that Movant's total offense level was 31, with an advisory guideline range of 121 to 151 months. (ECF No. 855 at 10-13.) The court noted that the statutory maximum sentence was 120 months. (*Id.* at 10.) The court then granted the government's motion under U.S.S.G.

§ 5K1.1 for a downward departure of three levels, for an offense level of 28 and a sentence range of 87 to 108 months. (*Id.* at 13, 18-19, 28.) The court sentenced Movant to 87 months.

Movant argues the court should have started with the statutory maximum of 10 years (120 months) before granting the three-level departure under U.S.S.G. § 5K1.1. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); *United States v. Coleman*, 98 F.3d 1339 at *1 (5th Cir. 1996) (per curiam) (unpublished) ("[T]he departure is subtracted from the statutory maximum, not from the guideline range as otherwise calculated.") This would have resulted in an initial offense level of 30, with a sentence range of 108 to 135 months. After subtracting three levels under § 5K1.1, the offense level would have been 27 with a sentencing range of 78 to 97 months.

Movant fails to establish ineffective assistance of counsel. Movant cannot show that but for his counsel's failure to raise this claim, there is a reasonable probability that the result of his sentencing would have been different. Movant's 87-month sentence was within the 78 to 97 month sentencing range for offense level 27. Further, the district court found that

11

after considering all the sentencing factors, an 87-month sentence was the appropriate sentence. (ECF No. 855 at 28.) The court stated that Movant "deserved the sentence that I'm imposing." (*Id.*) Movant's claim is therefore without merit.

Movant also argues his 87-month sentence was above the statutory maximum of ten years. Movant's 87-month sentence was below the 120-month statutory maximum. Therefore, any objection based on the claim that the sentence exceeded the statutory maximum would have been frivolous. Defense counsel was not required to make frivolous objections. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

### B.     Explanation of Sentence

Movant argues his counsel was ineffective when counsel failed to object that the court inadequately explained the basis for its sentence. The record, however, shows that the court specifically discussed the factors under 18 U.S.C. § 3553 and how those factors justified a sentence of 87 months. (ECF No. 855 at 23-27.) The court discussed the seriousness of the offense, the deterrence value of the sentence, and stated that many people were substantially harmed by Movant's conduct. Movant's conclusory claim is without merit and should be denied. *See Ross v. Estelle*, 694 F.2d 1008,

1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

### 4. Amended Motion

#### A. Statute of Limitations

Movant filed an amended motion raising the new claims that: (1) defense counsel was ineffective for failing to argue that Movant's two-level sentence reduction in anticipation of U.S.S.G. Amendment 782 should have lowered Movant's offense level to 25, with an advisory sentence range of 63 to 78 months; (2) the two-level increase for maintaining a premises for the purpose of distributing a controlled substance was improper "double counting"; and (3) he was held responsible for units of hydrocodone that should not have been counted.

The new claims raised in Movant's amended motion are time-barred. As discussed above, Movant's deadline for filing his § 2255 claims was June 27, 2017. He did not file his amended motion until July 11, 2017. (*See* ECF No. 5 at 9.) His claims are therefore untimely. Movant has also failed to establish that he was misled by the government or prevented in some extraordinary way from asserting his rights. *Coleman*, 184 F.3d at 402. He is therefore not entitled to equitable tolling of the limitations period.

### B.   Procedural Bar

In his amended motion, Movant argues (1) the two-level increase for maintaining a premises for the purpose of distributing a controlled substance was improper "double counting"; and (2) he was held responsible for units of hydrocodone that should not have been counted. The government argues these claims are procedurally barred because Movant failed to raise these claims on direct review.

When a Movant fails to raise a claim on direct appeal, the claim is procedurally defaulted and can only be considered under § 2255 if the Movant can show cause for his failure to raise the claim on direct appeal and actual prejudice, or that he is actually innocent. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Movant has failed to show cause for his failure to raise these claims, or that he is actually innocent. The claims are therefore procedurally barred.

### C.   Ineffective Assistance of Counsel

In his amended motion, Movant claims his counsel was ineffective when counsel failed to argue that the two-level reduction of sentence under U.S.S.G. § 782 should have been deducted from the statutory maximum sentence of 120 months.

14

Movant's claim is without merit. Under U.S.S.G. § 5G1.1, a departure from the advisory guideline range is calculated from the statutory maximum sentence. *See* Commentary, U.S.S.G. § 5G1.1. Here, the court did not depart from the guidelines. Instead, Amendment 782 lowered Movant's base offense level for Movant's drug quantity. Movant has therefore failed to establish that his counsel was ineffective.

IV.

For the foregoing reasons, the Court recommends that the motion to vacate, set-aside, or correct sentence under § 2255 motion be dismissed as barred by the statute of limitations, or alternatively, denied.

Signed December 4, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

15

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).